UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WESTFIELD INSURANCE COMPANY                                            PLAINTIFF

v.                                                             CIVIL ACTION NO. 3:10-CV-713-S

SIEGEL FOUNDATIONS, et al.                                                DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on two motions:

1. A motion by defendants James Siegel and Siegel Foundations to dismiss this action for lack of subject matter jurisdiction (DN 14); and

2. A motion by defendant Mark Willey to dismiss this action for failure to state a claim upon which relief can be granted (DN 16).

For the reasons set forth herein, Siegel and Siegel Foundations' motion to dismiss will be **GRANTED** and Willey's motion will be **DENIED** as moot.

## BACKGROUND

Plaintiff Westfield, an insurer, issued a commercial general liability insurance policy to Siegel Foundations. Compl. ¶ 5. The policy had a $2 million general aggregate limit and was in effect from August 9, 2009 to August 9, 2010. *See id.* ¶¶ 5–6; *see also* Westfield Policy (DN 1-2) at 1. Westfield has filed an action in this court seeking a declaration that it owes no duty to pay or extend coverage to Siegel and Siegel Foundations for damages sought by Willey in a civil action filed against Siegel and Siegel Foundations in Kentucky state court. Westfield also seeks a declaration that it owes no duty to defend Siegel or Siegel Foundations in Willey's action.

Willey's complaint, filed in Jefferson County, Kentucky, Circuit Court, alleges that on June 3, 2010, Siegel, who was the president, director, and job site manager of Siegel Foundations, "became irate" with Willey "about a work related issue." Willey Compl. ¶ 8. Willey claims that Siegel knocked a cup out of Willey's hand, "verbally attacked" Willey, *id.* ¶ 9, and eventually punched Willey in the face three times. *Id.* ¶ 11. Willey asserts that he was "only able to stop the attack by defending himself with a board." *Id.* ¶ 13. Willey has made claims for battery and intentional infliction of emotional distress against both Siegel and Siegel Foundations, and also seeks punitive damages. Willey has also filed a workers' compensation claim as a result of the injuries he suffered in the fight, and Siegel has been charged in Jefferson District Court with assault in the fourth degree.

Westfield argues that it is not required to defend Siegel and Siegel Foundations in Willey's civil action for several reasons. First, Westfield asserts that coverage is barred by the policy's "expected injury or intended injury exclusion." Compl. ¶ 24. The exclusion states:

> **2. Exclusions**
> This insurance does not apply to:
> **a. Expected Or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Westfield Policy (DN 1-2) at 38 (emphasis in original).

Second, Westfield asserts that coverage is barred by the policy's "employment-related practices exclusion endorsement." Compl. ¶ 30. The endorsement states:

> This insurance does not apply to:
>
> "Bodily injury" to:
> (1) A person arising out of any:
>     (a) Refusal to employ that person;

> (b) Termination of that person's employment; or
> (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person . . . .
>
> This exclusion applies:
> (1) Whether the injury-causing event . . . occurs before employment, during employment or after employment of that person;
> (2) Whether the insured may be liable as an employer or in any other capacity; and
> (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Westfield Policy (DN 1-2) at 33.

Finally, Westfield asserts that the altercation between Siegel and Willey was not an "occurrence" as defined in the policy. Compl. ¶ 36. The policy provides coverage for "bodily injury" only if it is caused by an "occurrence." Westfield Policy at 37. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 51.

Siegel and Siegel Foundations now move to dismiss Westfield's actions, arguing that Westfield has not satisfied the amount-in-controversy requirement necessary to vest this court with subject matter jurisdiction or, alternatively, that this court should decline to exercise its jurisdiction pursuant to the Declaratory Judgment Act. Willey moves to dismiss Westfield's action against him, claiming that it has failed to state a claim for which relief may be granted.

## ANALYSIS

**I. Subject Matter Jurisdiction**

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act does not provide an independent basis for federal subject matter jurisdiction, and therefore claims brought under the Act must satisfy one of the requisite tests for federal subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950).

When it filed its complaint, Westfield invoked this court's diversity jurisdiction. United States district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

Westfield is an Ohio corporation with its principal place of business in the state of Ohio, Compl. ¶ 2, while Siegel Foundations is a Kentucky corporation with its principal place of business in Kentucky, and Siegel and Willey are both Kentucky citizens. Compl. ¶ 3. Diversity of citizenship is present here.

With respect to the amount in controversy, the general rule is that "the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–21 (6th Cir. 2000).[1] Westfield has asserted in its complaint that it believes the damages sought by Willey in his civil action will exceed $75,000 and that it believes the cost of

---

[1] In their briefs, both Westfield and Siegel state that the burden is on Westfield to prove that the value of its claim exceeds $75,000. This, however, is the burden a party that *removes* an action from state court to federal court must satisfy. *See, e.g.*, *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769–70 (6th Cir. 2009) ("The burden is on [the removing party] to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount-in-controversy requirement."). Because Westfield brought its declaratory judgment action in this court in the first place, rather than removing an existing action from state court, we will apply the rule set forth in *Rosen.*

providing a defense to Siegel and Siegel Foundations will "more likely than not" exceed $75,000. Compl. ¶¶ 12–13.

Siegel and Siegel Foundations argue that the $75,000 threshold may not be met because Willey's injury, according to the defendants, "lacks severity" and because Willey's civil case, also according to the defendants, "is very straightforward and uncomplicated." While these arguments show a possible dispute as to the value of Willey's claim or the cost to Westfield of defending against it, they do not establish "to a legal certainty" that the amount in controversy in Westfield's action is less than $75,000. Accordingly, we conclude that the amount in controversy requirement has been satisfied, and this matter is properly before this court on diversity grounds.

**II. Declaratory Judgment Jurisdiction**

Although the Declaratory Judgment Act authorizes district courts to exercise jurisdiction over declaratory actions, it does not require them to do so. *Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). In fact, the Act allows the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

In *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), the United States Court of Appeals for the Sixth Circuit provided five factors for the court to review when determining whether a district court may properly exercise its jurisdiction under the Act. The five factors are:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.*

**1. Settlement of the Controversy**

As the Sixth Circuit explained in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008), two lines of precedent have developed within the Circuit with respect to the first *Grand Trunk* factor. "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* However, another set of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* The Sixth Circuit explained these contrary lines of cases by looking to the factual scenarios underpinning them. *Id.* The court distinguished cases such as *Bituminous*, *supra*, in which resolution of the declaratory action hinged on a "fact-based question of state law," from cases like *Northland Ins. Co. v. Stewart Title Guarantee Co.*, 327 F.3d 448 (6th Cir. 2003), in which the declaratory action addressed only questions of law not before the state court. *Id.* at 555–56. The court concluded that the first *Grand Trunk* factor weighs in favor of retaining jurisdiction in cases presenting facts similar to those in *Northland*, but that it weighs against such jurisdiction in cases presenting facts similar to those in *Bituminous. Id.*

We find the instant case more akin to *Bituminous* than *Northland*. Although Westfield is not currently a party to the actions pending in state court, resolution of Westfield's claims in this case would necessarily require consideration of factual issues that are also being litigated in Kentucky courts. For instance, to determine whether the altercation was or was not covered by the "expected injury" exclusion in the Westfield policy, we would be required to determine whether the "bodily injury" suffered by Willey was "expected or intended" by Siegel and, if so, whether Siegel was using "reasonable force to protect persons or property." Resolving this question would demand an inquiry as to Siegel's intent and whether he was acting in self-defense – questions that seem to this court likely to be a part of the resolution of both the civil and criminal actions currently pending in state court.

Similarly, determining whether the altercation fell under the "employment-related practices" exclusion would require a factual inquiry into the circumstances giving rise to the dispute between Willey and Siegel. And determining whether the altercation was an "occurrence" would require a determination as to whether the altercation could be considered an "accident." These inquiries would not merely require consideration of matters of law that could be cleanly separated from the state-law proceedings, but rather would require factual analysis that would give rise to the possibility of contradictory results in state and federal court. For these reasons, we conclude that this factor counsels against federal jurisdiction.

**2. Clarification of Legal Relations**

Hearing this case in federal court would certainly clarify the legal relations between Siegel and Siegel Foundations and Westfield. *See Scottsdale*, 513 F.3d at 557. This factor therefore counsels in favor of exercising federal jurisdiction. *See id.* Whether such clarification

would serve a "useful purpose," however, is uncertain. As Judge Thapar of the United States District Court for the Eastern District of Kentucky noted in a case similar to this one, "Yes, resolving the declaratory judgment action would clarify the legal relations between [the insurer] and [the insured]. . . . But remember that clarification must serve a "useful purpose." And it does not really do so here. The state court can . . . clarify these very same issues – perhaps better, with its state-law expertise and familiarity with this case." *Nautilus Ins. Co. v. Grayco Rentals, Inc.*, No. 10-333-ART, 2011 WL 839549 at *4 (E.D. Ky. Mar. 7, 2011). Accordingly, we note that though this factor tilts toward the exercise of jurisdiction, its weight is somewhat questionable.

**3. Race for Res Judicata**

This factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale*, 513 F.3d at 558 (citations and quotations omitted). The operative question is "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* Courts are generally "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record," *id.*, and "when the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (quoting *Bituminous*, 373 F.3d at 814).

There is no evidence Westfield filed this action as part of a race for res judicata, and it filed this action approximately three months after Willey filed his suit in state court Accordingly, we will give Westfield the benefit of the doubt as to its motivations for filing this action. In such a situation, however, this factor is considered neutral rather than weighing in favor of federal

jurisdiction. *See Travelers Indem. Co. v. Bowling Green Professional Associates, PLC*, 495 F.3d 266, 273 (6th Cir. 2007) ("Although no improper motive prompted this action, this factor is neutral.").

**4. Friction between State and Federal Courts**

This factor weighs against the exercise of federal jurisdiction because of the two cases against Siegel and Siegel Foundations, plus Willey's workers' compensation claim, that are currently pending in state court. As explained above, any determination as to Westfield's duty to defend or indemnify Siegel and Siegel Foundations would inevitably require extensive fact-finding by this court as to what occurred during the altercation between Siegel and Willey. In light of the danger of inconsistent findings by the state and federal courts, we conclude that this factor counsels strongly against the exercise of federal jurisdiction.

**5. Existence of an Alternative Remedy**

Westfield has an alternative remedy available in Kentucky state court. Kentucky law allows actions for declaratory relief. *Scottsdale*, 513 F.3d at 562; *see also* KY. REV. STAT. § 418.040. A Kentucky court would also be better suited than a federal court to resolve the issues in this case, which rest entirely on state law. *See Travelers*, 495 F.3d at 272. And a declaratory action in Kentucky state court could possibly be combined with the underlying tort action, allowing all issues in this case to be resolved by the same judge. *Scottsdale*, 513 F.3d at 562. For these reasons, we believe a declaratory action in a Kentucky court would be a superior remedy here, and conclude that this factor weighs against hearing this case.[2]

---

[2]Westfield contends that Kentucky rules prohibiting the introduction of evidence of a party's status as an insured preclude it from proceeding in state court. We do not see, however, how these rules would prevent Westfield from filing a separate declaratory action to determine its obligations

continue...

### 6. Balancing the Factors

The Sixth Circuit has not provided guidance as to how a district court is to balance the *Grand Trunk* factors. *See Scottsdale*, 513 F.3d at 563. However, in this case only one of the five factors – the second – counsels in favor of the exercise of federal jurisdiction. One – the third – is neutral, while the first, fourth, and fifth weigh against this court's exercising its jurisdiction. We therefore conclude that it is inappropriate to entertain jurisdiction over this matter, and will dismiss it without prejudice.

### III. Willey's Motion to Dismiss

Because this court has concluded that it lacks jurisdiction over the action as a whole, we will deny Willey's motion to dismiss as moot.

A separate order will issue in accordance with this opinion.

August 8, 2011

Charles R. Simpson III, Judge
United States District Court

---

[2]...continue
to Siegel and Siegel Foundations under its policy. In fact, Westfield itself acknowledges that it "could have immediately filed an [sic] declaratory judgment action to resolve any controversies regarding insurance coverage," although it claims that such a move would result in it being accused of "racing to the courthouse in an effort to obtain a favorable judgment . . . ." DN 22 at 12.